UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MELVIN S. MORRIS, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>MICHAEL J. ASTRUE Commissioner of the )<br>Social Security Administration, )<br>)<br>Defendant. ) | No. 1:12-cv-00523-MJD-RLY |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff Melvin S. Morris requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Social Security Disability Insurance Benefits ("DIB") under Title II and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d), & 1382c(a)(3). For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.[1]

### I. Procedural History

Morris filed an application for DIB and SSI on January 11, 2008, alleging an onset of disability of February 1, 2006. Morris' applications were denied initially on May 13, 2008 and on reconsideration on August 11, 2008. Morris requested a hearing, which was held on May 25, 2010 before Administrative Law Judge Stephen Davis ("ALJ"). The ALJ denied Morris' applications on November 22, 2010. The Appeals Council denied Morris' request for review on

---

[1] The parties consented to the Magistrate Judge conducting all proceedings and ordering the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Any objections to or appeal of this decision must be made directly to the Court of Appeals in the same manner as an appeal from any other judgment of a district court. 28 U.S.C. § 363(c)(3).

February 21, 2012, making the ALJ's decision the final decision for purposes of judicial review. Morris filed his Complaint with this Court on April 20, 2012.

## II. Factual Background and Medical History

Morris was 48 years old on the alleged onset date of disability. He has a twelfth grade education and past relevant work as a framing carpenter. In August 2005, Morris was diagnosed with hepatitis C and had a portion of his lung surgically removed. He was able to return to work after the surgery in 2006, but then he could no longer work after he injured his back in July 2006. In February 2006, a lumbar spine x-ray revealed mild degenerative disc disease involving the lower lumbar spine consisting of disc space narrowing as well as mild facet hypertrophy and sclerosis.

In March 2006 Morris sought treatment at Midtown Community Health Center ("Midtown") for depression, where he was treated by Robert Stuckey, LCSW. Mr. Stuckey indicated that Morris scored in the severe range on the PHQ-9 Depression screen endorsing anhedonia; low energy; poor sleep, appetite, and concentration; and suicidal ideation. Morris again visited Midtown in September 2006 where he continued to score in the severe range on the depression screen.

Morris also had a spinal MRI in September 2006. The findings revealed mild loss of disc space height and T2 signal intensity at L1-L2, L4-L5, and L5-S1. In April 2007, Morris had a cervical spine x-ray that revealed mild mid and lower disc height loss and anterior end plate spurring.

In March 2008, Morris attended a consultative examination by social security physician, Joseph Croffic, M.D. Dr. Croffic opined that grip strength, muscle tone, muscle strength, and

fine finger manipulative abilities were all normal, except muscle strength was 4/5 in lower extremities bilaterally.

Morris received a mental status evaluation in April 2008 by social security doctor Suzanne Leiphart, PhD. Dr. Leiphart diagnosed Morris with mild depressive disorder, mild anxiety disorder, rule out learning disorder, and assigned a GAF of 53.

Joseph Pressner, PhD, a state agency psychological medical consultant, completed a Psychiatric Review Technique in April 2008. He evaluated Morris' mental impairments under Listings 12.04 Affective Disorders and 12.06 Anxiety-Related Disorders. Dr. Pressner found that, under Listing 12.04, Morris had a medically determinable impairment of depressive disorder, mild. Under Listing 12.06, Dr. Pressner found that Morris had a medically determinable impairment of anxiety disorder, mild.   Although Dr. Pressner found that Morris had medically determinable impairments, he opined that Morris' mental impairments were not severe. In assessing the "paragraph B" areas of functional limitation, Dr. Pressner opined that Morris had only mild restriction of activities of daily living; no limitation in maintaining social functioning; no limitation in maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration. Dr. Pressner also noted that Morris was not withdrawn or antisocial, displayed appropriate judgment and insight, and seemed capable of cooperating with others.

J. Sands, M.D. completed a Physical Residual Functional Capacity ("RFC") Assessment on behalf of the state agency in May 2008. Dr. Sands opined that Morris could lift twenty pounds occasionally and ten pounds frequently, stand and/or walk for about six hours in an eight-hour workday, sit for six hours in a work day, and was able to do unlimited pushing and/or pulling. Dr. Sands reported that there was no loss of motion in Morris' low back, his strength was intact,

gait and station were normal, there were no overt neurological deficits shown, but there were decreased breath sounds in the right lower lung lobe. Dr. Sands opined that Morris could occasionally climb ramp/stairs, stopping, kneeling, crouching, and crawling. Dr. Sands found that there were no manipulative limitations established. As for environmental limitations, Dr. Sands opined that Morris should avoid concentrated exposure to extreme cold; extreme heat; humidity; and fumes, odors dusts, gases, and poor ventilation.

Morris had a blood test in October 2009; the results showed an elevated rheumatoid factor. He was referred to a specialist for arthralgias and possible rheumatoid arthritis in January 2010. Morris had a limited range of motion in his cervical spine with stiffness in all direction and limited range of motion of the lumbar spine. In February 2010, Morris received an evaluation of bilateral hand pain and numbness. Morris reported that his left hand was worse than his right and he had cramping, numbness, or weakness, and sensation of swelling. Adam Cohen, M.D. referred Morris to occupational therapy to get new carpal tunnel wrist splints and obtain an electromyelogram of the left median nerve to determine whether his hand symptoms were related to peripheral median nerve compression. Morris had an EMG in May 2010, which results showed evidence for bilateral median neuropathy at the wrist of moderate severity – left worse than the right.

In July 2010, the ALJ sent interrogatories to Richard Hutson, M.D. regarding the severity of Morris' impairments. Dr. Hutson responded that Morris had the severe impairments of multilevel degenerative disc disease of the lumbar spine and degenerative joint disease of facet joints. Dr. Hutson also found that the impairments did not meet or equal a listed impairment. He agreed with Dr. Sands' RFC Assessment, noting that Morris' hands could be used frequently, but

4

not constantly. Dr. Hutson also opined that Morris should be limited to light work due to moderate bilateral carpal tunnel syndrome, left greater than right.

### III.   Applicable Standard

To be eligible for SSI and DIB, a claimant must have a disability under 42 U.S.C. § 423.[2] Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step

---

[2] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

### IV.     The ALJ's Decision

The ALJ first determined that Morris met the insured status requirements of the Act through June 30, 2010. Applying the five-step analysis, the ALJ found at step one that Morris had not engaged in substantial gainful activity since the alleged onset date of February 1, 2006. At step two, the ALJ found that Morris had the following severe impairments: degenerative disc disease, partial lung removal, hepatitis C, and carpal tunnel syndrome. The ALJ also found that Morris' mental impairments were not severe.

At step three, the ALJ determined that Morris does not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, subpt. P, App. 1 (20 C.F.R. 404.1520(d), 404.1525, 416.920(d), 416.925 and 416.926).

The ALJ found that Morris had the residual functional capacity to perform light work with the following limitations: Morris can lift and/or carry ten pounds frequently and twenty pounds occasionally; he can stand and/or walk, off and on, for six hours during an eight-hour workday with intermittent sitting; he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; he can never climb ladders, ropes or scaffolds; he must avoid concentrated exposure to extreme cold and heat, fumes, odors, dusts, gases, poor ventilation and the like; he is limited to using his hands on a frequent, but not constant, basis because of carpal tunnel syndrome; and he can sit most of the time with some pushing and pulling of arm and leg controls.

At step four, the ALJ determined that Morris was unable to perform any past relevant work. At step five, the ALJ determined that, considering Morris' age, education, work experience, and RFC, there were jobs that existed in the national economy that Morris could perform. Therefore, the ALJ determined that Morris was not disabled.

## V.   Discussion

The central issue in this matter is whether there is substantial evidence to support the ALJ's determination that Morris is not disabled. Morris raises two arguments as to why this Court should reverse the decision of the ALJ: 1) the ALJ improperly assessed Morris' mental impairments at step two; and 2) the ALJ erroneously determined that Morris was capable of full

time work in the RFC. For the reasons listed below, the Court finds that there is substantial evidence to support the ALJ's determination that Morris was not disabled.

### A.     The ALJ Did Not Err at Step Two.

Morris argues that the ALJ erred in his step two analysis that Morris' mental impairments were not severe. Specifically, he argues that the ALJ ignored medical evidence that Morris scored in the severe range on the PHQ-9 Depression screen. Morris also objects to the ALJ referring to Morris' treatment notes that indicated his depression was doing well as support that the mental impairments were not severe.

Morris argues that the ALJ ignored medical evidence from Midtown that Morris scored in the severe range on the PHQ-9 Depression screen in May 2006 and September 2006. The ALJ need not discuss every piece of medical testimony. *Carlson*, 999 F.2d at 181. Although not discussed, the ALJ considered the contents of the Midtown medical records. [R. 15.] The ALJ also discussed that Morris had not returned to Midtown for over a year for treatment, and Morris was on Zoloft and doing better. Morris cites to appellate court cases to argue that improvement does not mean that the impairment no longer affects Morris' ability to function in the work place, because people tend to have good days and bad; however, Morris does not cite to anything after September 2006 to support his claim that his depression or anxiety was disabling. In 2008, two mental health doctors determined that Morris had only mild depressive disorder and mild anxiety disorder. [R. 300, 301.] Dr. Pressner specifically found that Morris' mental impairments did not affect Morris maintaining social function; or concentration, persistence, or pace; and only mildly affected his activities of daily living. [R. 311.] Dr. Pressner also opined that Morris was not withdrawn or antisocial, displayed appropriate judgment and insight, and seemed capable of cooperating with others. [R. 311.] This is substantial evidence that the ALJ relied upon and

accorded significant weight in support of his step two analysis. The ALJ built an accurate and logical bridge from the evidence to the conclusion and, therefore, did not err in his step two analysis.

### B. The ALJ's RFC Assessment is Supported By Substantial Evidence.

Morris also argues that the ALJ erred in his RFC assessment by not providing more limitations based on his mental impairments, specifically, that the RFC does not account for or discuss Morris' ability to handle stress in the workplace. Morris relies on Social Security Ruling ("SSR") 85-15 to support his proposition. However, Morris cites to no evidence in the record to support a claim that he is unable to cope with work-related stress. *Bradley v. Barnhart*, 175 Fed.Appx. 87, 92 (7th Cir. 2006). Further, the ALJ evaluated Morris' mental impairments and the limitations imposed by them. [R. 15-16.] As discussed above, the ALJ relied on objective medical evidence in determining that Morris only had mild limitations in activities of daily living and mild limitations in concentration, persistence, or pace. Thus, the ALJ properly determined that Morris's mental impairments were not severe enough to be a limiting factor in the RFC assessment. The RFC assessment is also consistent with the opinions of Drs. Sands and Hutson. [R. 317-324, 440.]. Morris has not demonstrated that he would have an inability to cope with stress in the workplace, thus the ALJ did not err.

Finally, Morris argues that the ALJ erroneously determined that Morris was capable of full time work based in part on his minimal level of activities of daily living, which did not account for the time Morris spent napping and watching television. Morris' activities of daily living actually played no part in the ALJ's RFC assessment. Morris' activities of daily living were discussed in the ALJ's step two analysis of determining whether Morris' mental impairments were severe, for which, as discussed above, the ALJ properly concluded that they

9

were not. Assuming that the ALJ had based, "in part," the RFC assessment on Morris' activities of daily living, it was a very small part. Brief for Plaintiff at 15, *Morris v. Astrue*, No. 1:12-cv-00523-MJD-RLY (S.D. Ind. October 1, 2012), ECF No. 17. The majority of the RFC assessment was based on the medical evidence which was discussed in detail. [R. 17-20.] Even assuming that the ALJ erred in supporting the RFC assessment with Morris' activities of daily living, the error was harmless as there is substantial evidence to support the ALJ's RFC assessment which Morris does not challenge. Because the ALJ's RFC assessment is supported by substantial evidence the ALJ did not err.

## VI. Conclusion

For the reasons set forth above, substantial evidence supports the ALJ's determination that Morris is not disabled and the Commissioner's decision is **AFFIRMED**.

Date: 02/12/2013

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov